IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JONATHAN CARROLL on behalf of himself and all others similarly situated, | No. 1:16-CV-04561 |
| Plaintiff, | Judge: Honorable John J. Tharp, Jr. |
| v. | |
| CRÈME DE LA CRÈME, INC., | |
| Defendant. | |

**DEFENDANT CRÈME DE LA CRÈME, INC.'S MEMORANDUM IN SUPPORT OF ITS
MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) and 12(b)(6)**

Dated: June 8, 2016

**CRÈME DE LA CRÈME, INC**.

Debra R. Bernard, ARDC No. 6191217
DBernard@perkinscoie.com
**PERKINS COIE LLP**
131 South Dearborn, Suite 1700
Chicago, Illinois 60603
Telephone: (312) 324-8559
Facsimile: (312) 324-9559

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................ 1

II.    ARGUMENT ...................................................................................................... 2

    A.    Plaintiff's Allegations ............................................................................ 2

    B.    Legal Standards for Dismissal ............................................................. 4

        1.    Dismissal Pursuant to Fed. R. Civ. P. 12(b)(1) ........................ 4

        2.    Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6) ........................ 4

    C.    Plaintiff Has Suffered No Injury And, Therefore, Pursuant to Fed. R. Civ. P. 12(b)(1) the Complaint Should Be Dismissed for Lack of Article III Standing and Lack of Standing Under Illinois Law ............................................... 5

        1.    Plaintiff has not alleged any injury or actual damages and thus, there is no Article III standing sufficient to confer subject matter jurisdiction ........................................................................ 5

        2.    Plaintiff's allegations fail to satisfy the requirements of standing under Illinois law ..................................................................... 9

    D.    Plaintiff's Allegations Are Not Sufficient to State a Claim Under BIPA Upon Which Relief Can be Granted ................................................... 10

III.   CONCLUSION ................................................................................................ 15

# TABLE OF AUTHORITIES

**Page**

CASES

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).................................................................................5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...........................................................................4, 7, 11

*Bohn v. Boiron, Inc.*,
    No. 11-C-8704, 2013 WL 3975 126 (N.D. Ill. Aug. 1, 2013) .................8

*Carr v. Koch*,
    2012 IL 113414, 981 N.E.2d 326 ...........................................................9

*Clapper v. Amnesty International, USA*,
    133 S. Ct. 1138 (2013)............................................................................7

*Conrad v. Boiron*,
    No. 13-C-7903, 2015 WL 7008136 (N.D. Ill. Nov. 12, 2015) ...............8

*Diedrich v. Ocwen Loan Servicing*,
    LLC, No. 13-CV-693, 2015 WL 1885630 (E.D. Wis. Apr. 24, 2015)....................13

*Doe v. Chao*,
    540 U.S. 614 (2004)..........................................................................14, 15

*Finsad v. Washburn Univ. of Topeka*,
    252 Kan. 465, 845 P.2d 685 (1993) .....................................................13

*Giannopoulos v. Iberia Lineas Aereas de Espana, S.A.*,
    17 F. Supp. 3d 743 (N.D. Ill. 2014) ......................................................5

*Greer v. Illinois Housing Development Auth.*,
    122 Ill.2d 462, 524 N.E.2d 561 (1988) ..................................................9

*Gubala v. CVS Pharmacy, Inc.*,
    No. 14 C 9039, 2015 WL 3777627 (N.D. Ill. June 16, 2015) .................4

*Gurba v. Cmty. High Sch. Dist. No. 155*,
    2015 IL 118332 (Ill. 2015)...................................................................12

*In re Trans Union Corp. Privacy Litig.*,
    211 F.R.D. 328 (N.D. Ill. 2002)............................................................2

*Khan v. Children's National health System,* No. TDC-15-2125, 2016 WL
    2946165 (D. Md. May 18, 2016) ..........................................................8

## TABLE OF AUTHORITIES
(continued)

**Page**

*Klay v. Humana*,
   382 F.3d 1241 (11th Cir. 2004) ....................................................................................2

*Lewert v. P.F. Chang's China Bistro, Inc.*,
   No. 14-3700, 2016 WL 1459226 (7th Cir. April 14, 2016)...........................................8

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)......................................................................................................4

*Maglio v. Advocate Health & Hosps. Corp.*,
   2015 IL App (2d) 140782, 40 N.E.3d 746 *appeal denied*, 39 N.E.3d 1003 (Ill.
   2015) ........................................................................................................................9, 10

*Padilla v. Dish Network L.L.C.*,
   No. 12-CV-7350, 2013 WL 3791140 (N.D. Ill. July 19, 2013)...............................13, 14

*Parker v. Time Warner Entm't. Co.*,
   331 F.3d 13 (2d Cir. 2003)...........................................................................................2

*People ex rel. Stocke v. 11 Slot Machines*,
   80 Ill. App. 3d 109 (1979) ..........................................................................................12

*People v. Lewis*,
   233 Ill.2d 393, 860 N.E.2d 299...................................................................................12

*People v. Trainor*,
   196 Ill.2d 318, 752 N.E. 2d 1055 (2001) ...................................................................12

*Pierce v. Zoetis, Inc.*
   818 F.3d 274 (7th Cir. 2016) ......................................................................................10

*Pine Top Receivables of Illinois, LLC v. Banco De Seguros Del Estado*,
   No. 12 C 6357, 2012 WL 6216759 (N.D. Ill. Dec. 13, 2012) .....................................9

*Remijas v. Neiman Marcus Group*,
   794 F.3d 688 (7th Cir. 2015) ........................................................................................8

*Roberts v. City of Chicago*,
   817 F.3d 561 (7th Cir. 2016) ......................................................................................10

*Ross v. AXA Equitable Life Ins. Co.*,
   115 F.Supp. 3d 424 (S.D.N.Y. 2015)...........................................................................8

*Spokeo v. Robins*,
   136 S. Ct. 1540 (2016).........................................................................................4, 5, 6

# TABLE OF AUTHORITIES

(continued)

Page

*Sterk v. Redbox Automated Retail, LLC*,
    672 F.3d 535 (7th Cir. 2012) ...................................................................14

*Verfuerth v. Orion Energy Sys., Inc.*,
    65 F. Supp. 3d 640 (E.D. Wisc. 2014) ......................................................11

*Weddle v. Smith & Nephew, Inc.*,
    No. 14-C-9549, 2016 WL 1407634 (N.D Ill. April 11, 2016) ..................10

*Wells Fargo Bank v. Leafs Hockey Club, Inc.*,
    No. 13-C- 2247, 2014 WL 1017211 .........................................................11

*Williams v. Merle Pharmacy, Inc*.,
    No. 15-CV-1262, 2015 WL 6143897 (C.D. Ill. Oct. 19, 2015)................13

## STATUTES

70 ILCS 405/3.20............................................................................................12

740 ILCS 14/1 *et. seq.*....................................................................................1

775 ILCS 5/1-103 ...........................................................................................12

## I.    INTRODUCTION

This suit against Crème de la Crème, Inc. ("Crème") which indirectly owns premier early childhood learning centers[1] is one of a series of recent putative class action lawsuits under the 2008 Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq.*  BIPA governs the consent, use and disclosures in connection with "biometric identifiers" (which includes "fingerprints") and "biometric information," both defined terms in the statute.[2]  740 ILCS 14/10. The statute was enacted primarily to address the use and disposition of biometric identifiers and information that are tied to financial transactions and/or other personally identifying information. 740 ILCS 14/5.

In this case, Plaintiff voluntarily provided his finger scan for an enhanced security process to gain access to the childcare facility where his son and daughter were enrolled. Nonetheless, Plaintiff now claims that Defendant should be liable for millions of dollars in this putative class action on the basis that Plaintiff did not "consent or "agree" for Defendant to collect and store his finger scan information and that he was not provided disclosures regarding the collection and retention of his finger scan information.  Significantly, Plaintiff does not allege any harm or misuse of this information.  The fact that Plaintiff *voluntarily* provided his finger scan for secure access and presumably appreciated that only those who did so could pick up his children, makes Plaintiff's claims in this case nothing short of outrageous.

In apparent recognition of the fact that technical violations of the consent and disclosure provisions, without more, should not expose the alleged violators to ruinous liability in the absence of any harm, the Illinois legislature limited the private right of action to people who have been "aggrieved" by a violation of the statute and provides for liquidated damages of

---

[1] While not raised in this motion, at the appropriate time, Defendant intends to address the fact that Crème de la Crème, Inc. does not directly own or operate any of the childcare facilities.  Each facility is owned and operated by a wholly owned subsidiary of Crème de la Crème, Inc., in this case, Crème de la Crème (Glenview), Inc.  For purposes of this motion, however, the term Defendant or "Crème" is used for ease of reference and because that is what Plaintiff has alleged, but should not be construed to be a concession or admission that Crème de la Crème, Inc. is a proper party in the event this case proceeds.

[2] Although BIPA was enacted in 2008, this statute has only been discovered and pursued by class action lawyers in the past year—likely because of the potential for enormous damages due to the statutory liquidated damages provisions of $1,000 to $5,000 per violation. 740 ILCS 14/20.

$1,000 (if negligent) to $5,000 (if willful) or actual damages, whichever is greater, per violation. 740 ILCS 14/20. In this case, there are no allegations regarding any data breach, identity theft or any other harm suffered by Plaintiff for the alleged procedural violations of the statute. However, Crème's reward for providing enhanced security for the children in their care is now exposure to potential catastrophic liability where the named Plaintiff has suffered no actual injury.[3]

For the reasons set forth herein, Plaintiff's complaint should be dismissed in its entirety.

## II.    ARGUMENT

### A.    Plaintiff's Allegations

Plaintiff Jonathan Carroll enrolled his son and daughter in preschool at the Crème de la Crème Glenview Campus—known as Crème de la Crème Glenview ("Crème Glenview"). Complt. ¶20. (ECF 1). Plaintiff alleges that "fingerprints"[4] are collected from parents and guardians during the child-enrollment process and are used "to provide parents and guardians easy and purportedly secure access to their children." Compl. ¶4. In fact, as alleged by Plaintiff, "[t]he individual is only granted access to the secure portion of the facility where the children are located if the collected fingerprint matches a fingerprint stored in Defendant's database that was collected during enrollment." *Id.*

---

[3] Given the substantial "liquidated damages" award per violation, this type of award on a class-wide basis would be entirely disproportional to the technical violations alleged here where there is no actual injury. Courts have recognized that combining a statutory damages provision with a class action complaint may "expand the potential statutory damages so far beyond the actual damages suffered that the statutory damages come to resemble punitive damages—yet ones that are awarded as a matter of strict liability, rather than for the egregious conduct typically necessary to support a punitive damages award." *Parker v. Time Warner Entm't. Co.*, 331 F.3d 13, 22 (2d Cir. 2003) (acknowledging that "devastatingly large damages awards, out of all reasonable proportion to the actual harm suffered by members of the plaintiff class, may raise due process issues."); *Klay v. Humana,* 382 F.3d 1241 (11th Cir. 2004) (In cases where "the defendants' potential liability would be enormous and completely out of proportion to any harm suffered by the plaintiff, we are likely to find that individual suits, rather than a single class action, are the superior method of adjudication."); *see also In re Trans Union Corp. Privacy Litig.*, 211 F.R.D. 328, 351 (N.D. Ill. 2002) (refusing to certify a class action for statutory damages under the Fair Credit Reporting Act where the consumers did not claim, nor could claim, any actual economic loss).

[4] Use of the term fingerprint in this motion is based on Plaintiff's allegations and is not intended to be a concession or admission that the technology used collects or stores "fingerprints" such that BIPA even applies—in fact what is stored by Procare Software, the vendor, is an encrypted mathematical representation which cannot be used to recreate the fingerprint. But that is an argument for another day. *See e.g.* http://www.procaresupport.com/getdoc/77a27ace-be35-4769-8f6d-e876edede09e/Fingerprint-Reader.aspx. (last visited on June 6, 2016).

Plaintiff alleges that in the course of enrolling his children, he was "required" to "place his fingers on a fingerprint scanner" and that Defendant collected and stored digital copies of Plaintiff's fingerprints. Complt. ¶21. Acknowledging that Crème Glenview has a "secure area" for the children, Plaintiff alleges that he was required to scan his fingerprint in order to gain access to the secure area of Crème Glenview to pick up one or both of his children. Compl. ¶22. Plaintiff alleges that he "entered the secure area of the Glenview Campus to pick up his children approximately twenty-five (25) times per month."[5] *Id.*

While acknowledging that in essence, he voluntarily provided his finger for scanning purposes to gain access to the secure childcare area, Plaintiff disingenuously claims that he "never consented, agreed or gave permission—written or otherwise—to Defendant for the collection or storage of his unique biometric identifiers or biometric information." Compl. ¶23. Plaintiff further alleges that he did not sign a "written release"[6] and that Defendant "never provided Plaintiff with the requisite statutory disclosures nor an opportunity to prohibit or prevent the collection, storage or use of his unique biometric identifiers or biometric information." Compl. ¶¶ 24, 25.[7]

Further, Plaintiff alleges "upon information and belief" that Defendant is violating § 15(e) of BIPA "by failing to protect from disclosure individuals' biometrics by applying a reasonable standard of care within its industry and in a manner at least as protective as the manner in which Defendant stores, transmits and protects other confidential and sensitive information." Compl. ¶5 (emphasis added). Additionally, Plaintiff alleges, also "upon

---

[5] It appears that Plaintiffs are attempting to recover $1,000 or $5,000 for *each* such use over the course of the enrollment of Plaintiff's children. *See e.g.* Compl. ¶42. Just for Plaintiff, that would be 25 times per month over the two years his children were enrolled at Crème Glenview. This is one more indication of the outrageousness of Plaintiff's claim and the disproportionate damages for a technical violation in the absence of actual injury. *See* n.3, *supra.*

[6] The term "written release" is defined in BIPA as "informed written consent, or in the case of employment, a release executed by a employee as a condition of employment." 740 ILCS 14/10. Thus, in this context, "release" means informed written consent.

[7] Indeed, if Plaintiff did not want to agree to this type of secure access, he was certainly free to enroll his children in a different childcare program. In fact, while Plaintiff alleges that his children "completed their schooling in May 2014" Compl. ¶22, Plaintiff notably omits the fact that his children started in August, 2012—when a different entry system was in place and one he was free to continue using.

information and belief" that Defendant "is selling, leasing, trading or otherwise profiting from individuals' biometrics in violation of §15(c)." Compl. ¶6. There are no facts alleged in support of these allegations made on "information and belief," or from which reasonable inferences could be made to support those allegations. Nor does Plaintiff allege that there has been any data breach or other misuse of his specific information.

### B. Legal Standards for Dismissal

#### 1. Dismissal Pursuant to Fed. R. Civ. P. 12(b)(1)

A complaint must be dismissed when a court does not have subject matter jurisdiction of the action. Fed. R. Civ. P. 12(b)(1). Subject-matter jurisdiction is lacking where a plaintiff does not establish standing to sue in federal court in accordance with Article III of the U.S. Constitution. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992). As the Supreme Court recently reiterated, the "irreducible constitutional minimum" of standing requires that a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo v. Robins,* 136 S. Ct. 1540, 1547 (2016) (citing *Lujan*). The Court in *Spokeo* also noted that at the pleading stage, the plaintiff must "'clearly…allege facts demonstrating each element.'" *Id.* (quoting *Warth v. Seldin,* 422 U.S. 490, 518, 95 S. Ct. 2197 (1975)). Hence, it is Plaintiff's burden to establish standing. *Lujan,* 504 U.S. at 561. As set forth herein, Plaintiff has not satisfied the requirements of Article III standing in this case and therefore, this Court does not have subject matter jurisdiction to adjudicate Plaintiff's claim. Nor do the allegations support standing under Illinois law. Thus, Plaintiff's complaint should be dismissed with prejudice.

#### 2. Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)

Rule 12(b)(6) serves to test the "sufficiency of the complaint." *Gubala v. CVS Pharmacy, Inc.*, No. 14 C 9039, 2015 WL 3777627, at *1 (N.D. Ill. June 16, 2015). A complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "This standard demands more than an unadorned, the-defendant-unlawfully-

harmed-me accusation." *Giannopoulos v. Iberia Lineas Aereas de Espana, S.A.*, 17 F. Supp. 3d 743, 746 (N.D. Ill. 2014) (internal citation and quotation marks omitted). It is not sufficient to plead "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" or "facts that are merely consistent with a defendant's liability." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). Rather, "facial plausibility" exists only "when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (emphasis added). Plaintiff's allegations are insufficient to state a claim under BIPA and the Complaint should be dismissed on this basis as well.

    **C.**    **Plaintiff Has Suffered No Injury And, Therefore, Pursuant to Fed. R. Civ. P. 12(b)(1) the Complaint Should Be Dismissed for Lack of Article III Standing and Lack of Standing Under Illinois Law**

        **1.**    **Plaintiff has not alleged any injury or actual damages and thus, there is no Article III standing sufficient to confer subject matter jurisdiction**

Plaintiff's own allegations demonstrate that the purpose of using the finger scan technology for the Crème Glenview Campus was to protect the children by providing a means of secure access to the facility. While Plaintiff claims he was "required" to us the finger scanner, he voluntarily submitted to this identification process and the allegations demonstrate that he was clearly aware of its purpose—to provide enhanced security for his children. *See e.g.* Compl. ¶¶ 4, 21, 22. There are no factual allegations whatsoever that Plaintiff's finger scan data or any other information of his was compromised, breached, misappropriated or misused for any purpose. In other words, Plaintiff has not alleged *any* injury—actual or threatened—as a result of the alleged technical procedural violations of BIPA.

In order to establish Article III standing, Plaintiff must first show that he suffered an "injury in fact." This element requires Plaintiff to show that he suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan,* 504 U.S. at 560)(internal quotation

marks omitted).  In *Spokeo*, the Court further noted that to satisfy the particularization requirement, the injury "must affect the plaintiff in a personal and individual way;" that is, the plaintiff must have suffered "some actual or threatened injury." *Id.* (citations and internal quotation marks omitted).  Moreover, particularization standing alone is not sufficient—the injury in fact must also be "concrete."  *Id.*  A "concrete" injury must actually exist—while intangible injuries can be concrete, "that does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.  *Id.* at 1549.  Thus, in *Spokeo*, the Court held that "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.*  With regard to the specific case before it, the Supreme Court stated that "Robins could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III."  *Id.*  Further explicating on this concept, the Court noted that:

> [a] violation of one of the FCRA's procedural requirements may result in no harm.  *For example, even if a consumer reporting agency fails to provide the required notice to a user of the agency's consumer information, that information regardless may be entirely accurate.*  In addition, not all inaccuracies cause harm or present any material risk of harm.  An example that comes readily to mind is an incorrect zip code.  It is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm.

*Id.* at 1550. (emphasis added).

Applying these principles to the case at bar, Plaintiff has failed to allege standing sufficient to convey Article III jurisdiction.  Here, Plaintiff alleges nothing more than "a bare procedural violation" which is clearly divorced from any concrete harm.  Indeed, Plaintiff's complaint seeks to turn an enhanced security measure for the protection of his children—*that he voluntarily engaged in*—into a multi-million dollar class action lawsuit on the basis that he did not "consent" to providing his own fingerprint, that "on information and belief" Defendant did not apply a "reasonable standard of care" to protect individuals' biometrics from disclosure, and that "on information and belief" Defendant is selling, leasing, trading or otherwise profiting from

individuals' biometrics. Compl. ¶¶ 5, 6. However, there are absolutely no facts alleged in the Complaint that lend any support whatsoever to these allegations regarding what Defendant may have done with Plaintiff's (or anyone else's) information. Plaintiff cannot establish Article III standing with such conclusory, formulaic and wholly unsupported allegations. *See e.g. Twombly,* 550 U.S. at 557 (declining to take as true conclusory allegation "upon information and belief" that the companies had entered a conspiracy without enough facts to make that statement plausible).

Moreover, Plaintiff does not allege any specific (or even general) harm to him as a result of these alleged procedural violations. Instead, Plaintiff remarkably speculates that:

> If Defendant's database of digitized fingerprints were to fall into the wrong hands, by data breach or otherwise, the parents and guardians to whom these sensitive biometric identifiers belong could have their identities stolen ***or, worse yet, could have their child stolen from Defendant's facility***.

Compl. ¶7. (emphasis added).

This hyperbolic scenario clearly fails to meet the concrete and particularized standard to satisfy the requirements for Article III standing. Indeed, this scenario is not only illogical but it is "too speculative" and too attenuated to satisfy Article III standing—it does not realistically allege any threat of injury. *Clapper v. Amnesty International, USA,* 133 S. Ct. 1138, 1147 (2013) ("We have repeatedly reiterated that threatened injury must be *certainly impending,* to constitute injury in fact, and that allegations of *possible* future injury are not sufficient."). This scenario posited by Plaintiff is also wholly inconsistent with the description in Plaintiff's own complaint of the process at Crème Glenview required to gain access to his children—"the individual is only granted access to the secure portion of the facility where the children are located if the collected fingerprint [from the scanning device in the entranceway of the facility] matches a fingerprint stored on Defendant's database that was collected during enrollment." Compl. ¶4. Hence, as even described by Plaintiff, the purpose of the finger scan is *to prevent* the scenario set forth in Paragraph 7 of the Complaint—as noted at Compl.¶4, the finger scan presented at the facility

must match that previously collected. These allegations demonstrate that even if there was a breach (which there wasn't), no one could use information in the database to "steal" children from the facility. Plaintiff's assertion in this regard is nonsense.

Plaintiff does not allege that the facts portrayed in this hypothetical scenario ever happened, that there was a data breach or that his finger scan information has been misused or compromised in any way. Nor does Plaintiff allege that there is any data or information that was collected along with his finger scan that would be of any value to anyone in the absence of his own physical finger (scan). Plaintiff alleges nothing more than bare procedural violations and that is simply not enough to create subject matter jurisdiction.[8]

The alleged technical violation of BIPA, without a "concrete and particularized injury" and one that is "actual or imminent," also does not satisfy standing under Article III because the violation of a right created under state law does not confer federal court standing under the U.S. Constitution. *Conrad v. Boiron,* No. 13-C-7903, 2015 WL 7008136, at *2 (N.D. Ill. Nov. 12, 2015) ("A state statute cannot confer Constitutional standing when the Plaintiff has not suffered the requisite harm."); *Bohn v. Boiron, Inc.*, No. 11-C-8704, 2013 WL 3975126, at *3 (N.D. Ill. Aug. 1, 2013) ("the IFCA allows for injunctive relief where appropriate, however, this does not alleviate [plaintiff's burden of alleging an injury in fact necessary to establish Article III standing.") (internal quotations omitted); *see also Khan v. Children's National health System,* No. TDC-15-2125, 2016 WL 2946165, at *7 (D. Md. May 18, 2016) ("a state statute or cause of action [cannot] manufacture Article III standing for a litigant who has not suffered a concrete injury"); *Ross v. AXA Equitable Life Ins. Co.,* 115 F.Supp. 3d 424, 433-35 (S.D.N.Y. 2015)

---

[8] The post-*Clapper* Seventh Circuit decisions on Article III standing in the data breach context are not helpful to Plaintiff in this instance. *See e.g. Remijas v. Neiman Marcus Group*, 794 F.3d 688, 693 (7th Cir. 2015)(where there was an actual data breach plaintiffs plausibly alleged Article III standing because, hackers had obtained credit card information of plaintiffs' and other customers and other customers had already experienced fraudulent charges as a result of the hack); *Lewert v. P.F. Chang's China Bistro, Inc.*, No. 14-3700, 2016 WL 1459226, at *3 (7th Cir. April 14, 2016) (where the Seventh Circuit followed its decision in *Remijas* relative to the imminent danger of direct injury under Article III because a national restaurant chain likewise incurred a large-scale data breach resulting in fraudulent charges from the theft of customer credit and debit card information.) Thus, in both those cases, there had been an *actual* data breach and *actual* resulting fraudulent charges, and therefore, the Court found that the risk of injury was "sufficiently immediate" to confer standing. There are no such allegations here.

(holding that the violation of a state statute is irrelevant in determining whether a plaintiff has satisfied its burden of pleading a sufficient injury-in-fact under Article III). Plaintiff has failed to establish Article III standing and the complaint should be dismissed.

### 2. Plaintiff's allegations fail to satisfy the requirements of standing under Illinois law

Where a claim arises under an Illinois statute, "the plaintiff must satisfy the requirements of both Article III standing and the state law of standing." *Pine Top Receivables of Illinois, LLC v. Banco De Seguros Del Estado,* No. 12 C 6357, 2012 WL 6216759, at *2 (N.D. Ill. Dec. 13, 2012). Illinois standing requirements, are similar to those in federal court and are also not satisfied by Plaintiff's allegations for the same reasons that Plaintiff cannot establish Article III standing. *Maglio v. Advocate Health & Hosps. Corp.*, 2015 IL App (2d) 140782, ¶ 25, 40 N.E.3d 746, 753 *appeal denied*, 39 N.E.3d 1003 (Ill. 2015). In Illinois, standing also requires some injury-in-fact to a legally cognizable interest. *Greer v. Illinois Housing Development Auth.,* 122 Ill.2d462, 492-93, 524 N.E.2d 561 (1988). To establish standing under Illinois law, "the claimed injury can be actual or threatened and it must be: (1) *distinct and palpable;* (2) fairly traceable to the defendant's actions; and (3) substantially likely to be prevented or redressed by the grant of the requested relief." *Carr v. Koch,* 2012 IL 113414, ¶28, 981 N.E.2d 326. (emphasis in original).

As noted, Plaintiff has not alleged any breach or conduct other than the technical statutory violations. Indeed, Plaintiff's hyperbolic scenario (Compl. ¶7) demonstrates the speculative nature of any alleged injury where there is no actual harm or damage. *Id.* at ¶25. In *Maglio,* Plaintiffs alleged a putative class action for a host of privacy related torts and statutory claims brought by a group of individuals against their health care provider and whose private health data had actually been stolen (not the case here) from the provider's electronic records. There, the Appellate Court held that plaintiffs had no standing because the dissemination of their private information was not an injury in and of itself, and they had not demonstrated that their information had been misused. *Id.* at ¶26. Indeed, the Court in *Maglio* noted that:

> Here, plaintiffs' allegations of injury are clearly speculative, and therefore plaintiffs lack standing to bring suit. Their claims that they face an increased risk of, for example, identity theft are purely speculative and conclusory, as no such identity theft has occurred to any of the plaintiffs. Thus, their allegations fail to show a *distinct and palpable* injury.

*Id.* at ¶24. (emphasis in original).

Under Illinois law, Plaintiff also has no standing. Accordingly, Plaintiff's complaint should be dismissed with prejudice.[9]

### D. Plaintiff's Allegations Are Not Sufficient to State a Claim Under BIPA Upon Which Relief Can be Granted

Many of the same principles demonstrating that Plaintiff has not sufficiently alleged Article III standing also support the argument that Plaintiff 's allegations do not state a claim under BIPA. It is by now well settled that "[t]o survive a motion to dismiss, a complaint must 'state a claim to relief that is plausible on its face." *Roberts v. City of Chicago,* 817 F.3d 561, 565 (7th Cir. 2016)(*quoting Twombly,* 550 U.S. at 570 (internal quotations omitted). Indeed, '[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (*quoting Iqbal,* 556 U.S. at 678). Importantly, "the complaint must do more than recite the elements of a cause of action in a conclusory fashion." *Id.* Further, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Pierce v. Zoetis, Inc.* 818 F.3d 274, 279-80 (7th Cir. 2016). Legal conclusions must be supported by factual allegations—"a complaint must allege facts to support a cause of actions' basic elements; the plaintiff is required to do at least that much." *Weddle v. Smith & Nephew, Inc.,* No. 14-C-9549, 2016 WL 1407634, at *2 (N.D Ill. April 11, 2016).

As set forth below, Plaintiff fails to allege anything more than bare conclusions unsupported by factual allegations with respect to a critical element required for Plaintiff to state a claim under BIPA—that Plaintiff is an "aggrieved party" entitled to bring a claim. 740 ILCS

---

[9] Since Plaintiff cannot establish standing under Illinois law, any refiling of this case in state court would be futile.

14/20. In fact, Plaintiff's allegations that Defendant is violating 740 ILCS 14/15(c) by "selling, leasing, trading or otherwise profiting from individuals' biometrics" and that Defendant is violating 740 ILCS 14/15(e) by "failing to protect from disclosure individuals' biometrics by applying a reasonable stand of care" in the manner Defendant stores such information, are made entirely "upon information and belief." Compl. ¶¶ 5, 6, 40, 41. Yet, there are absolutely no facts alleged in support of these "information and belief" allegations, and as such, these allegations are insufficient to state a claim. *See e.g., Twombly,* 550 U.S. at 557 (conclusory allegations on information and belief insufficient); *Wells Fargo Bank v. Leafs Hockey Club, Inc.,* No. 13-C-2247, 2014 WL 1017211, at *4) (N.D. Ill. Mar. 14, 2014) (rejecting that "information and belief" allegations are insufficient, but dismissing claim based on failure to support conclusory allegations.). Moreover, "pleading on 'information and belief' is not a license to undertake a fishing expedition." *Verfuerth v. Orion Energy Sys., Inc.,* 65 F. Supp. 3d 640, 647 (E.D. Wisc. 2014). Indeed, "the mere fact that someone believes something to be true does not create a plausible inference that it is true." *Id.* (*quoting In re Darvocet, Darvon, and Propoxyphene Products Liability Litigation,* 756 F.3d 917, 931 (6th Cir. 2014)). Here, there is no basis for the "information and belief" allegations; there are no facts alleged, nor could there be, that there have been fraudulent transactions, notices from third parties or any other facts that could lend credence to these formulaic allegations that Defendant has somehow misused Plaintiff's finger scan information.

While Plaintiff cites to a number of provisions in BIPA in an attempt to state a claim (often without any specific factual assertions), Plaintiff wholly ignores the limiting proviso regarding who can bring an action under the statute. Specifically, Section 20 of BIPA provides a limited right of action:

> ***Any person aggrieved by a violation of this Act shall have a right of action,*** in a State circuit court or as a supplemental claim in federal court against an offending party.

740 ILCS 14/20 (emphasis added).

Thus, BIPA's plain language limits the right of action against a private entity to "[a]ny person aggrieved." 740 ILCS 14/20. By its express terms, a plaintiff who has not been "aggrieved" by a violation of the statute cannot bring a claim under the Act. Although BIPA itself does not describe the term "aggrieved," it is a basic tenet of statutory construction that the words of a statute "cannot be read in a fashion that would render other words or phrases meaningless, redundant or superfluous." *People v. Trainor,* 196 Ill.2d 318, 332, 752 N.E. 2d 1055, 1063 (2001). Courts should not add, delete, or modify words in a statute in a way that would change its meaning. *People ex rel. Stocke v. 11 Slot Machines*, 80 Ill. App. 3d 109, 115 (1979); *see also People v. Lewis,* 233 Ill.2d 393, 402, 860 No.E.2d 299, 305 ("[Courts] will not depart from the plain statutory language by reading into the statute exceptions, limitations or conditions that the legislature did not express"). In construing a statute, the primary objective is to ascertain and effectuate the legislature's intent, and the best indicator of that intent, "is the statutory language itself, which must be given its plain and ordinary meaning." *Gurba v. Cmty. High Sch. Dist. No. 155,* 2015 IL 118332, at ¶10 (Ill. 2015).

The above quoted language in Section 20 of BIPA is unambiguous and requires a plaintiff to establish more than a technical violation of BIPA—Plaintiff must also demonstrate that he is "aggrieved" by a violation of the Act. The plain and ordinary meaning of "aggrieved" requires an allegation of injury. To hold otherwise, would render the "aggrieved" requirement meaningless and superfluous contrary to principles of statutory construction. While BIPA does not define the term "aggrieved," this Court can find guidance from other state statutes and case law construing "aggrieved" in similar contexts. For example, in other Illinois statutes, a person "aggrieved" is clearly defined as one who is injured. *See* 775 ILCS 5/1-103 (Human Rights Act defining "aggrieved party" as "a person who is alleged or proved to have been injured by a civil rights violation or believes he or she will be injured by a civil rights violation under Article 3 that is about to occur"); 70 ILCS 405/3.20 (Soil and Water Conservation Districts Act defining "aggrieved party" as "any person whose property, resources, interest or responsibility is being injured or impeded in value or utility or any other manner by the adverse effects of sediment

caused by soil erosion"); see also BLACK'S LAW DICTIONARY (9th ed. 2009) ("aggrieved" means "having suffered loss or injury;" "injured").

Significantly, where the term "aggrieved" is not specifically defined in a relevant statute, courts interpreting the term have held that the plaintiff must prove an actual injury other than simply an alleged violation of the statute itself.  See *Williams v. Merle Pharmacy, Inc.*, No. 15-CV-1262, 2015 WL 6143897, at *4 (C.D. Ill. Oct. 19, 2015) (dismissing complaint under Illinois Wage Payment and Collection Act where cause of action was limited to "[a]ny employee aggrieved" by a violation of the Act because plaintiff only alleged she failed to receive proper payroll information);  *Diedrich v. Ocwen Loan Servicing*, LLC, No. 13-CV-693, 2015 WL 1885630, at *10 (E.D. Wis. Apr. 24, 2015) (finding for defendant where cause of action was limited to persons "aggrieved" by a prohibited act of a mortgage broker and plaintiff alleged only that mortgage broker failed to properly respond to qualified request for information); *Finsad v. Washburn Univ. of Topeka,* 252 Kan. 465, 471-73, 845 P.2d 685, 690-91 (1993) (Kansas Consumer Protection Act, which creates a right of action for a consumer "aggrieved" by a violation of the statute, requires a showing of actual harm caused by the statutory violation).

In an analogous case, *Padilla v. Dish Network L.L.C*., No. 12-CV-7350, 2013 WL 3791140 (N.D. Ill. July 19, 2013), the Court was faced with construing the term "aggrieved" in a federal statute and held that to recover under a statute that provided a right of action only to an "aggrieved' party, the plaintiff had to plausibly allege actual damages.  *Id.* at *5.  In *Padilla*, the plaintiff alleged that after he cancelled his DISH  services, DISH retained his personally identifiable information ("PII") and failed to send annual notices about his PII in violation of Section § 338i of the federal Satellite Home Viewer Extension and Reauthorization Act ("SHVERA") and state law.  Like BIPA, SHVERA only provides a right of action to "any person *aggrieved* by an act of a satellite carrier in violation of this section." (emphasis added). In *Padilla,* the Court held that a person is not "aggrieved" under that statute when his personal information has been only retained and where he has experienced no actual harm.  *Id*.  In reaching this conclusion, the Court noted that because SHVERA provides that "an 'aggrieved'

person may recover 'actual damages but not less than liquidated damages' of at least $1,000," plaintiff was not "aggrieved" and could not recover statutory damages without plausibly alleging actual damages. *Id.* Since Plaintiff alleged nothing more than the technical procedural statutory violations regarding retention of his information and the failure to provide the required notices, the Court found Plaintiff had not alleged any actual damages and dismissed that damages claim. *Id.* at *5-7.

The liquidated damages provision also does not help Plaintiff—"liquidated damages" are intended to be an estimate of actual damages—not a guaranteed recovery in the absence of actual injury. As in SHVERA, the Illinois BIPA similarly provides that only any person "aggrieved" by a violation of this Act may recover "liquidated damages of $1,000 (for negligent violations) or $5,000 (for intentional or reckless violations) or actual damages, whichever is greater" 740 ILCS 14/20(1) and (2).[10] However, even where there is a liquidated damages provision as in BIPA, a Plaintiff must still must have sustained an actual injury to bring a claim. *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 538 (7th Cir. 2012). In *Sterk*, at issue was the Video Privacy Protection Act—which also provides a cause of action only to "[a]ny person aggrieved" by certain violations and provides for "actual damages but not less than liquidated damages in an amount of $2,500. The Seventh Circuit concluded that the plaintiff must sustain actual damages to recover the liquidated amount because "liquidated damages are intended to be an estimate of actual damages." *Id.* There, because the plaintiff alleged only improper retention of personal information, which the court concluded does not result in an actual injury, the plaintiff was not entitled to liquidated damages.[11]

The Supreme Court reached the same conclusion with respect to the Privacy Act of 1974—a statute even less indicative that actual injury must be proved to entitle the plaintiff to statutory damages. *See Doe v. Chao*, 540 U.S. 614, 620 (2004). The Privacy Act provides that

---

[10] In addition to the monetary damages, Plaintiff seeks "injunctive and other equitable relief" allegedly to protect the interests of the Class. Compl., Prayer for Relief.

[11] In *Sterk,* the Court queried: "How could there be injury, unless the information, not having been destroyed, were disclosed? If, though not timely destroyed, it remained secreted in the video service provider's files until it was destroyed, there would be no injury." *Sterk,* 672 F.3d at 538.

individuals may recover "actual damages sustained by the individual . . . but in no case shall a person entitled to recovery receive less than the sum of $1,000." *Id.* at 619.  In *Chao*, the Court agreed with the government that the statute's minimum damages only applied to victims who could prove some actual damages.  *Id.*  A contrary reading, the Court noted, would be "at odds with the traditional understanding that tort recovery requires not only wrongful act plus causation reaching to the plaintiff, but proof of some harm for which damages can reasonably be assessed." *Id.* at 620-21.

As confirmed by this precedent, here, too, the inclusion of liquidated damages in BIPA does not change the requirement that a plaintiff must be "aggrieved"—i.e., have suffered an actual injury—to recover monetary damages under the statute.  Indeed, by permitting an "aggrieved" plaintiff to recover liquidated damages "or actual damages, whichever is greater," BIPA assumes that there are at least some actual damages in the first place.  To hold otherwise would ignore the statute's plain language and provide "giveaways to plaintiffs with nothing more than abstract injuries."  *Chao*, 540 U.S. at 625-26 (internal quotations omitted).

Plaintiff does not allege any pecuniary or actual injury in the complaint—there is simply no "person aggrieved" in this case.  The absence of this statutory requirement is fatal to Plaintiff's claim and the complaint should be dismissed.

## III.    CONCLUSION

For the reasons set forth herein, Plaintiff's Complaint should be dismissed in its entirety and with prejudice.

Dated: June 8, 2016

CRÈME DE LA CRÈME, INC.

By: _/s/ Debra R. Bernard_____
    Debra R. Bernard, ARDC No. 6191217
    DBernard@perkinscoie.com
    **PERKINS COIE LLP**
    131 South Dearborn, Suite 1700
    Chicago, Illinois 60603
    Telephone:  (312) 324-8559
    Facsimile:  (312) 324-9559

## CERTIFICATE OF SERVICE

I hereby certify that, on June 8, 2016, a copy of the foregoing Memorandum in Support of Its Motion to Dismiss was served via ECF filing to the following attorney of record:

Jennifer W. Sprengel
Daniel O. Herrera
CAFFERTY CLOBES MERIWETHER
& SPRENGEL LLP
150 S. Wacker Dr., Suite 3000
Chicago, Illinois 60606
Phone: (312) 782-4880
Facsimile: (312) 782-4485
Email: jsprengel@caffertyclobes.com
dherrera@caffertyclobes.com

Local Counsel for Plaintiff and the Putative Class

David P. Milian*
Frank S. Hedin*
CAREY RODRIGUEZ MILIAN GONYA, LLP
1395 Brickell Avenue, Suite 700
Miami, Florida 33131
Telephone: (305) 372-7474
Facsimile: (305) 372-7475
dmilian@careyrodriguez.com
fhedin@careyrodriguez.com

Counsel for Plaintiff and the Putative Class


/s/ *Debra R. Bernard*