**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

JONATHAN CARROLL on behalf of himself
and all others similarly situated,

        Plaintiff,

    v.

CRÈME DE LA CRÈME, INC.,

        Defendant.

No. 1:16-CV-04561

Judge: Honorable John J. Tharp, Jr.

**DEFENDANT CRÈME DE LA CRÈME, INC.'S REPLY MEMORANDUM IN SUPPORT
OF ITS MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12 (b)(6)**

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION ................................................................................................. 1

II.     ARGUMENT ........................................................................................................ 1

        A.      Plaintiff Does Not Allege Harm Sufficient to Confer Article III Standing ........... 1

                1.      Plaintiff Cannot Satisfy the Concrete Injury Required for Article III Standing .............................................................................................. 2

                2.      Plaintiff Has Not Alleged a "Risk of Harm" Sufficient to Demonstrate Article III Standing ........................................................... 11

        B.      Plaintiff's Allegations Also Fail to Support Statutory Standing Under BIPA ............................................................................................................. 14

III.    CONCLUSION .................................................................................................... 15

# TABLE OF AUTHORITIES

Page

C<small>ASES</small>

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)..........................................................................................................10

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007)..........................................................................................................10

*Bohn v. Boiron, Inc.,*
No. 11-C-8704, 2013 WL 3975126 (N.D. Ill. Aug. 1, 2013)....................................3

*Brown v. F.B.I.,*
793 F. Supp. 2d 368 (D.D.C. 2011)................................................................................10

*Cantrell v. Am. Broad. Companies,*
529 F. Supp. 746 (N.D. Ill. 1981)....................................................................................5

*Church v. Accretive Health, Inc.,*
No. 15-15708, 2016 WL 3611543 (3rd Cir. July 6, 2016)......................................11

*Clapper v. Amnesty Int'l USA,*
133 S. Ct. 1138 (2013)......................................................................................................13

*Conrad v. Boiron,*
No. 13-C-7903, 2015 WL 7008136 (N.D. Ill. Nov. 12, 2015)..............................3

*Duqum v. Scottrade, Inc.,*
Case No. 15-cv-1537-SPM, 2016 WL 3683001 (E.D. Mo. July 12, 2016)........12, 13

*Federal Election Comm'n v. Atkins,*
524 U.S. 11 (1998)...................................................................................................6, 7, 10

*Friends of Animals v. Jewell,*
No. 15-5223, 2016 WL 3854010 (D.C. Cir. July 15, 2016).....................................6

*Gubala v. Time Warner Cable, Inc.,*
15-cv-1078-pp, 2016 WL 3390415 (E.D. Wis. June 17, 2016).........................9, 10

*Hancock v. Urban Outfitters,et. al.,*
No. 14-7047, 2016 WL 3996710 (D.C. Cir. July 26, 2016).....................................3

*Havens Realty Corp. v. Coleman,*
455 U.S. 363 (1982)............................................................................................................7

*Heffron v. Green Tree Servicing, LLC,*
No. 15-cv-0996, 2016 WL 47915 (N.D. Ill. Jan. 5, 2016).......................................5

*Hollingsworth v. Perry*,
133 S. Ct. 2652 (2013) ............................................................................................ 3

*Huon v. Breaking Media, LLC*,
75 F. Supp. 3d 747 (N.D. Ill. 2014) ....................................................................... 5

*In re Facebook Biometric Information Privacy Litigation*,
No. 15-cv-3747, 2016 WL 2593853 (N.D. Cal. May 5, 2016) ................................ 8

*In re Fluidmaster*,
149 F. Supp. 3d 940 (N.D. Ill. 2016) .................................................................... 12

*In re Nickelodeon Consumer Privacy Litigation*,
No. 15-1441, 2016 WL 3513782 (3rd Cir. June 27, 2016) ...................................... 6

*In re SuperValu, Inc.*,
14-MD-2586, 2016 WL 81792 (D. Minn. Jan. 7, 2016) ....................................... 13

*Jamison v. Bank of America*,
Case No. 16-cv-422-KJM-AC, 2016 WL 3653456 (E.D. Cal. July 6, 2016) ................... 10, 11

*Khan v. Children's National Health System*,
No. TDC-15-2125, 2016 WL 2946165 (D. Md. May 18, 2016) ................................ 3, 13, 14

*Lane v. Bayview Loan Servicing, LLC*,
No. 15-C-10446, 2016 WL 3671467 (N.D. Ill. July 11, 2016) ............................. 11

*Leopold v. Levin*,
45 Ill. 2d 434 (1970) ............................................................................................... 5

*Lujan v. Defenders of Wildlife*,
504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 351 (1992) ........................................... 2

*Mandziara v. Canulli*,
299 Ill. App. 3d 593 (1998) ................................................................................. 15

*Padilla v. Dish Network, LLC*,
No. 12-cv-7350 (N.D. Ill. July 19, 2013) ............................................................. 15

*Public Citizen v. U.S. Department of Justice*,
491 U.S. 440 (1989) ...................................................................................... 6, 7, 10

*Rosenbach v. Six Flags Entertainment Corp.*,
16 CH 13 (Lake County, Il.) ................................................................................ 15

*Rottner v. Palm Beach Tan, Inc.*,
  15 CH 16695 (Cook County, July 12, 2016) ........................................................15

*Sartin v. EKF Diagnostics, Inc.*,
  16-1816, 2016 WL 3598297 (E.D. La. July 5, 2016) ...........................................10

*Smith v. The Ohio State University*,
  15-cv-3030, 2016 WL 3182675 (S.D. Ohio June 8, 2016)....................................11

*Spokeo v. Robins*,
  136 S. Ct. 1540 (2016) ................................................................................. passim

*Storm v. Paytime*,
  90 F. Supp. 3d 359 (M.D. 2015) ..........................................................................13

*Strautins v. Trustwave Holdings, Inc.*,
  27 F. Supp. 3d 871 (N.D. Ill. 2014) .......................................................................6

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009)................................................................................................3

*Thomas v. FTS USA, Inc*,
  No. 13-825, 2016 WL 3653878 (E.D. Va. June 30, 2016) ...................................11

*Thompson v. N. Am. Stainless*,
  562 U.S. 170 (2011)..............................................................................................15

*Tourgeman v. Collins Financial Services, Inc.*,
  08-CV-1392 CAB (NLS), 2016 WL 3919633 (S.D. Cal. June 16, 2016) .............14

*Vigil v. Take-Two Interactive Software, Inc.*,
  No. 15-cv-8211 (S.D.N.Y. June 29, 2016) ..........................................................8, 9

*Wall v. Michigan Rental*,
  Case No. 15-13254, 2016 WL 33418539 (E.D. Mich. June 22, 2016)..................14

**STATUTES**

750 ILCS 14/5(c) .......................................................................................................6

740 ILCS 14/15(d) ...................................................................................................10

740 ILCS 14/20.........................................................................................................14

750 ILCS 15/5(c) .......................................................................................................7

**Page**

**RULES**

Ill. Sup. Ct. Rule 308 ............................................................................................................15

**CONSTITUIONAL PROVISIONS**

U.S. Const. art. III ........................................................................................... passim

# I. INTRODUCTION

Plaintiff's claim can only survive if he is able to demonstrate an injury-in-fact that is both concrete and particularized sufficient to confer Article III standing. In his attempt to meet this Constitutional requirement, Plaintiff recharacterizes his claims as "misappropriation of property, invasion of privacy and informational injury" and largely ignores key facts alleged in his Complaint (*See e.g.* Resp. at 3). Contrary to the picture Plaintiff seeks to paint, this is not a case where Plaintiff's fingerscan information was collected unbeknownst to him; Plaintiff *voluntarily and repeatedly* provided his finger for scanning in order to use the enhanced security access feature at the Crème facility he selected for his children to attend. This is also not a case where there are any facts alleged that Plaintiff's biometric data was misused or compromised in any way; Plaintiff does not allege any data breach or that his identity (or his children) were compromised; nor does Plaintiff allege that he requested information and was denied access.

Plaintiff's sole claim and sole "injury" consists of his allegations that he did not provide *written* consent for the collection and use (for entry) of his fingerscan data and that he was not provided certain disclosures at the time he voluntarily and repeatedly used the finger scanner to gain access to the Crème facility to drop off or pick up his children. (Compl. ¶22). Plaintiff's opportunistic claim under BIPA, in the absence of any concrete injury or risk of harm, should be dismissed for lack of standing. Additionally, the Complaint should be dismissed on the basis that Plaintiff lacks statutory standing under BIPA as he is not an "aggrieved" person entitled to bring a claim under the statute.

# II. ARGUMENT

## A. Plaintiff Does Not Allege Harm Sufficient to Confer Article III Standing

Plaintiff's argument regarding standing is two-fold: the disclosure requirements set forth in BIPA are substantive, and therefore, a violation of those provisions in and of itself, is a concrete injury; or, alternatively, Plaintiff argues that if the alleged violations are procedural,

Plaintiff has sufficiently alleged a "risk of harm" that satisfies the concreteness requirement. Both arguments should be rejected.

1.     **Plaintiff Cannot Satisfy the Concrete Injury Required for Article III Standing**

Plaintiff asserts that the alleged statutory violations of failure to obtain written consent and disclose retention policies, are sufficient to confer Article III standing as the violations themselves constitute the required "concrete" injury.  (Resp. at 3-4).  Plaintiff's interpretation of *Spokeo v. Robins,* 136 S.Ct. 1540 (2016) is over simplified and inconsistent with *Spokeo* itself and the analysis engaged in by the majority of courts that have interpreted and applied *Spokeo* to date.

In *Spokeo,* the Court clarified several principles of Article III standing relevant here, including the three critical elements of standing; that the Plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable decision.  *Id.* at 1547 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130,119 L.Ed. 351 (1992)).  The Court further noted that as stated in *Lujan,* "[t]o establish injury in fact, a plaintiff must show that he or she 'suffered an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent not conjectural or hypothetical.'"  *Spokeo,* 136 S.Ct. at 1548 (quoting *Lujan,* 504 U.S. at 560).  For an injury to be particularized, it must affect the plaintiff in a personal and individualized way and for an injury to be concrete, it must actually exist and not be "abstract." *Id.*  Further, while "intangible injuries can nevertheless be concrete," there are certain requirements that must be met for such injuries to confer Article III standing.  *Id.* at 1549.  The crux of the Court's explanation on this issue is as follows:

> [W]e said in *Lujan* that Congress may "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." 504 U.S. at 578…
>
> Congress' role in identifying and elevating intangible harms does not mean that a plaintiff *automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right*

and purports to authorize that person to sue to vindicate that right. *Article III standing requires a concrete injury even in the context of a statutory violation.* For that reason Robins could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III.

*Id.* (citations omitted) (emphasis added).

Plaintiff relies on this language in *Spokeo* to argue that because the Illinois legislature provided for certain disclosure requirements, this created "substantive" rights such that the alleged violation of any of those requirements is itself a "concrete injury."[1] However, Plaintiff's theory in this regard is wholly unsupported for several reasons. First, the statute at issue is a state statute, not a Congressional enactment. It is well settled that "[s]tates cannot alter [federal courts'] role by issuing to private parties who otherwise lack standing a ticket to the federal courthouse." *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2667 (2013). Second, the alleged technical violation of BIPA, without a "concrete and particularized injury" and one that is "actual or imminent," does not satisfy standing under Article III because the violation of a right created under state law does not confer federal court standing under the U.S. Constitution. *Conrad v. Boiron,* No. 13-C-7903, 2015 WL 7008136, at *2 (N.D. Ill. Nov. 12, 2015) ("A state statute cannot confer Constitutional standing when the Plaintiff has not suffered the requisite harm."); *Bohn v. Boiron, Inc.*, No. 11-C-8704, 2013 WL 3975126, at *3 (N.D. Ill. Aug. 1, 2013) ("the IFCA allows for injunctive relief where appropriate, however, this does not alleviate [plaintiff's] burden of alleging an injury in fact necessary to establish Article III standing.") (internal quotations omitted); *see also Khan v. Children's National Health System,* No. TDC-15-2125, 2016 WL 2946165, at *7 (D. Md. May 18, 2016) ("a state statute or cause of action [cannot] manufacture Article III standing for a litigant who has not suffered a concrete injury").

---

[1] It is well settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing. *Spokeo,* 136 S.Ct. at 1547-48 (citations omitted). The injury-in-fact requirement, which includes a concrete injury is a "hard floor of Article III jurisdiction which cannot be removed by statute." *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009). Thus, just because Congress created a right, does not automatically allow anyone who claims that right has been violated to sue—there still must be a sufficient injury as a result of the violation. "[T]he legislature cannot dispense with the constitutional baseline of a concrete injury in fact." *Hancock v. Urban Outfitters,et. al.,* No. 14-7047, 2016 WL 3996710, at *3 (D.C. Cir. July 26, 2016) (citing *Spokeo,* 136 S.Ct. at 1549).

Thus, where a state statute is implicated, Plaintiff must still allege a type of harm recognized to be sufficiently concrete for Article III standing purposes and a statutory violation in and of itself does not "automatically" meet that threshold. Plaintiff's argument that the alleged violation of the BIPA disclosure provisions is sufficient to constitute a concrete injury to confer Article III standing must fail—particularly where Plaintiff voluntarily and repeatedly participated in the enhanced security using the fingerscan technology, and where there are no adequate allegations regarding any type of data breach, compromise, disclosure or misuse of his biometric data.[2]

Plaintiff argues that the BIPA provisions are substantive and not procedural, and, therefore, any violation of those provisions is itself a concrete injury sufficient to confer standing. To bolster this theory, Plaintiff now characterizes his claims as "misappropriation of property" and "invasion of privacy" torts. However, this is not a situation where Defendant surreptitiously collected and used Plaintiff's fingerscan data; rather, Plaintiff voluntarily took advantage of the use of biometric technology which provided more secure access to the Crème facility. (Compl.¶22). Indeed, as the Complaint's allegations demonstrate, Plaintiff clearly knew his fingerscan data was stored so it could be recognized and matched each time he used the system (Compl. ¶22):

> Plaintiff was required to place his finger on a fingerprint scanner,
> which scanned, collected and stored his fingerprint each time he
> entered the Glenview Campus.

Plaintiff's own allegations and common sense, demonstrate that given the purpose of this secure entry system, Plaintiff's initial fingerscan was stored so it could be compared against the scan he provided each time he entered the facility and Plaintiff was obviously aware of this

---

[2] In a number of instances, Plaintiff asserts that Defendant has not "denied" various allegations or that the BIPA violations are "undisputed." *See e.g.* Resp. at 1, 4, 5. Defendant has not yet filed an Answer so these assertions by Plaintiff should obviously be disregarded. Additionally, Plaintiff refers to facts extraneous to the complaint which purport to claim that "the technology for fingerprint tampering and replication is readily available on the internet." (Resp. at 13). Such discussion of the alleged merits is not appropriate on a motion to dismiss and should also be disregarded. The impropriety of including such information is further highlighted by Plaintiff's statement on the same page that fingerprints are so reliable that they "are the quintessential proof of criminal guilt." *Id.*

process.  To pretend otherwise by claiming that this process was a "misappropriation" of Plaintiff's personal property or an "invasion of his privacy" is disingenuous at best.  These allegations simply cannot support Plaintiff's claim that the alleged violations of the consent and retention disclosure provisions of BIPA violated some substantive privacy right.

In Plaintiff's continuing attempt to find a claim that could survive standing scrutiny, he also argues that the alleged failure to provide the disclosures is akin to the "invasion of privacy" tort of "intrusion upon seclusion."[3]  (Resp. at 6).  This theory too must fail.  "To state a claim for intrusion upon seclusion, a plaintiff must allege that (1) the defendant committed an unauthorized intrusion or prying into the plaintiff's seclusion; (2) the intrusion would be highly offensive or objectionable to a reasonable person; (3) the matter intruded on was private; and (4) that the intrusion cause plaintiff anguish and suffering."  *Heffron v. Green Tree Servicing, LLC,* No. 15-cv-0996, 2016 WL 47915, at *6 (N.D. Ill. Jan. 5, 2016); *Huon v. Breaking Media, LLC*, 75 F.Supp.3d 747, 771-72 (N.D. Ill. 2014) (same).  Contrary to Plaintiff's argument, Defendant did not "access[] private information especially such sensitive information as biologically unique identifiers, without a legal basis to do so," (Resp. at 6); rather, Plaintiff voluntarily and repeatedly provided this information to Defendant.  (Compl. ¶¶4, 21-22).  Defendant did not pry into Plaintiff's personal matters or otherwise disclose any personal information—thus, there is no basis for a claim of invasion of privacy or intrusion upon seclusion.

Nor do the alleged violations themselves, without more, establish a sufficient basis for Article III standing as an "informational injury."  This argument stems from the *Spokeo* Court's language that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact.  In other words, a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified."  *Id.* at 1549.  However, the context of the Court's analysis on this issue is significant. As authority for this statement, the

---

[3] Plaintiff's citations to *Leopold v. Levin,* 45 Ill. 2d 434, 440-41 (1970) (which concerned right of publicity) and *Cantrell v. Am. Broad. Companies,* 529 F.Supp. 746, 756 (N.D. Ill. 1981)(which concerned libel claims) for general privacy concepts are not particularly relevant here and do not support his alleged claim for intrusion upon seclusion. (Resp. at 6- 7).

Court refers to its decisions where the inability to obtain information (typically from the Government) is itself the injury-in-fact, citing *Public Citizen v. U.S. Department of Justice,* 491 U.S. 440, 449 (1989) and *Federal Election Comm'n v. Atkins,* 524 U.S. 11, 21 (1998). Those cases involved violations of federal statutes that required the disclosure of information that Congress had determined the public was entitled to obtain. Thus, the failure of the agencies to disclose that information to the public constituted a "sufficiently distinct injury to provide standing to sue." *Spokeo,* 136 S.Ct. at 1549-50 (quoting *Public Citizen,* 491 U.S. at 449).[4]

Federal statutes requiring governmental agencies to disclose information to the public is a far different scenario than the BIPA provisions regarding the disclosure of retention periods the violation of which is not the type of substantive right at issue in *Public Citizen* or *Atkins.* Indeed, as this Court has previously noted, "'rights' are not a type of injury by itself, and an allegation that a defendant violated a statute is not sufficient to confer standing." *Strautins v. Trustwave Holdings, Inc.,* 27 F.Supp. 3d 871, 882 (N.D. Ill. 2014) (citation omitted). The Court must look to the "harm" the right seeks to protect against and determine if that type of harm is justiciable under Article III. "In some instances, a plaintiff suffers the type of harm Congress sought to remedy when it simply s[eeks] and [is] denied specific agency records. In others, a plaintiff may need to allege that nondisclosure causes it to suffer the kind of harm from which Congress, in mandating disclosure, sought to protect individuals or organizations like it." *Friends of Animals v. Jewell,* No. 15-5223, 2016 WL 3854010, at *3 (D.C. Cir. July 15, 2016) (citations and internal quotations omitted). This case is not a situation where Plaintiff requested information and was denied as in the other informational injury cases. Moreover, in this case, the Illinois legislature was concerned about an individual's recourse if the biometric data was "compromised." (Resp. at 8, 750 ILCS 14/5(c)); the harm the statute is directed to was not the alleged violation of

---

[4] Plaintiff also cites the decision in *In re Nickelodeon Consumer Privacy Litigation,* No. 15-1441, 2016 WL 3513782, at *7 (3rd Cir. June 27, 2016) for the proposition that "Intangible harms that may give rise to standing []include harms…such as unlawful denial of access to information subject to disclosure." (Resp. at 12). This was a reference to the *Spokeo* discussion of the *Public Citizen* and *Atkins* decisions and prefaced the *Nickelodeon* Court's statement that procedural violations that do not result in harm are insufficient to confer standing. *Id.* Further, in *Nickelodeon* there were specific allegations regarding the unlawful disclosure of legally protected information.

consent and retention periods—rather, the concern was with regard to the consequences of a data breach and/or the dissemination of the information.

There are no facts alleged that demonstrate that Plaintiff's biometric data was compromised or that he was harmed in any way. In the absence of such harm, the alleged statutory violation alone cannot satisfy the Article III requirements. Here, the alleged failure to obtain written consent—where consent was *in fact* obtained by Plaintiff's knowing actions, *i.e.* providing the fingerscan for the purpose of gaining access to a secure area—and the alleged failure to disclose retention periods, are at best procedural violations for which Plaintiff must demonstrate concrete harm or a "risk of harm" as discussed *infra*. Plaintiff's attempt to compare the facts here with *Public Citizen* or *Atkins*, is a false analogy and does not provide a basis for Article III standing.

The fallacy in Plaintiff's position is further illustrated by Plaintiff's claim that "[i]t is irrelevant whether Plaintiff understood how Crème would use his fingerprints; because he was the object of a violation of BIPA's disclosure requirements, Plaintiff 'suffered injury in precisely the form the statute was intended to guard against, and therefore has standing.'" (Resp. at 1). Relying on the Supreme Court decision in *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 373 (1982) where the Court held that a housing discrimination "tester" had standing, Plaintiff argues that "[w]hether Plaintiff was 'aware of the purpose' of Crème's collection and storage of his fingerprints is irrelevant for standing purposes so long as he suffered the type of injury BIPA 'was intended to guard against.'" (Resp. at 11). Plaintiff's assertion that the fact he knew the purpose of the fingerscans is irrelevant is within the same ambit of housing discrimination "testers" who knew they never intended to purchase the property is again, a completely false analogy. The substantive harm of the right to truthful information under the Fair Housing Act at issue in *Havens*, is not akin to whether Plaintiff was aware of, repeatedly consented to and took advantage of the reasons for the fingerscan—to participate in the enhanced security at the Crème facility for the protection of his children. Moreover, the harm the statute was intended to guard against is the "compromise" of the biometric data—has not occurred here. 750 ILCS 15/5(c).

The suggestion that the alleged failure to additionally obtain Plaintiff's written consent to do that which he willingly did, is sufficient "injury in fact" in and of itself, subjecting Crème to crippling liability on a classwide basis, is clearly not supported by the decision in *Spokeo* or its progeny to date.

Defendant's interpretation is consistent with the only other Federal Court to address the standing issue for alleged violations of BIPA. In *Vigil v. Take-Two Interactive Software, Inc.,* No. 15-cv-8211 (S.D.N.Y. June 29, 2016), Judge Koetl held oral argument on Defendant Take-Two's Motion to Dismiss. In that argument, the Court noted its interpretation of *Spokeo* in response to Plaintiff's counsel's attempt to explain a concrete harm that was beyond the statutory violation (where plaintiff voluntarily provided facial scans). The following colloquy is instructive:

> THE COURT: But, when you say that you have concrete harm, your only concrete harm is the fact that a statute has been violated. And I had thought that *Spokeo* stands for the proposition that the violation of a statute alone is not a concrete injury sufficient for Article III, unless you can show a concrete injury, which is something different from simply the statement that the statute was violated. They took this, and by taking this, they violated the statute.
>
> MR. CAREY:[5] No, your Honor, I'm not, I must be failing to articulate this key distinction. It's not just that the statute was violated. It's that by virtue of the statute being violated, harm has resulted. I mean---
>
> THE COURT: Hold on, Hold on. Tell me what the harm was that resulted.
>
> MR. CAREY: The harm that results from that violation---
>
> THE COURT: Remember, remember, you told me there were two types of harm. There's actual harm and there is risk of harm.
>
> MR. CAREY: Correct.

---

[5] The same Plaintiff's firm (Carey Rodriguez Milian Gonya LLP) that represents the Plaintiffs in the *Take-Two* case, represents Plaintiff Carroll in this case. The Carey Rodriguez firm is also involved in *In re Facebook Biometric Information Privacy Litigation,* No. 15-cv-3747, 2016 WL 2593853 (N.D. Cal. May 5, 2016). That decision, cited by Plaintiff (Resp. at 8-9) did not address standing. However, Facebook has now filed a motion to dismiss based on standing which is currently set for hearing on September 14, 2016. (*Id.* at ECF 129).

> THE COURT: We're on actual harm now. And my question is, you say actual harm. What was the actual harm?
>
> MR. CAREY; The actual harm is that my clients' personal face scans are in defendant's possession. And let me--
>
> THE COURT: Now, how can that be considered to be an actual harm, other than the violation of the statute? Your client under all of the circumstances of the complaint clicked on, gave over your client's facial scan to be able to play the game.
>
> So, how is it a harm that your client did what your client consented---that's what the complaint says--to do, other than it was under the circumstances that were in alleged violation of the statute?

(6/29/16 Tr. at pp. 22-23. A copy of the hearing transcript is attached hereto as Exhibit A).

The discussion continues in the same vein with the Court continuing to question what harm the Plaintiff is alleging beyond the statutory violation itself. (*See e.g.* Tr. at pp. 13-25). While the Court ultimately did not rule on the merits in that case (the motion to dismiss was denied as moot),[6] it is clear that Judge Koetl did not think that the statutory violation itself was a concrete harm sufficient to infer Article III standing under *Spokeo*.

Significantly, other Courts construing *Spokeo* where federal statutes are at issue, have generally held that a statutory violation which does not in and of itself constitute a concrete injury, does not create Article III standing. For example, in *Gubala v. Time Warner Cable, Inc.*, 15-cv-1078-pp, 2016 WL 3390415 (E.D. Wis. June 17, 2016), the Plaintiff alleged violations of the Cable Communications Policy Act (CCPA) which requires cable operators to destroy personally identifiable information ("PII") if it is no longer required for the purpose for which it was collected. The Court found that allegations of retention of the PII were sufficient to find the "particularized" injury requirement for standing, but were **not** sufficient as a "concrete" injury

---

[6] The day after the oral argument in the *Take-Two* case, the Second Circuit vacated and remanded two cases to allow the Plaintiffs to replead in light of *Spokeo*. Since in *Take Two*, the decision in *Spokeo* was issued after the briefing was closed and the parties had only submitted letters addressing *Spokeo*, the Court denied the motion as moot in light of the Second Circuit's action and provided Plaintiff an opportunity to replead. *Take-Two Interactive*, 15-821 (ECF 42, Order attached hereto as Exhibit B). On July 15, 2016, Plaintiffs filed an amended complaint (ECF 43) and on July 29, 2016, the Defendant filed another Motion to Dismiss again raising the standing issues. *Id.* at ECF 48-49. Defendant's motion should be fully briefed by August 19, 2016. *Id.* at ECF 42.

noting that there were no allegations of disclosure to third parties or harm to the Plaintiff. *Id.* at *4.

Likewise, here, there are no specific allegations that Plaintiff's information was disclosed to a third party or any allegations from which such consequence could even be inferred. Plaintiff attempts to clear this hurdle with vague and unspecified allegations that do nothing more than parrot the statutory provisions (740 ILCS 14/15(d)) and claim that "on information and belief" Crème has violated those provisions. (*See e.g.* Compl. at ¶¶40-41). Such conclusory allegations on information and belief, without any supporting allegations, are insufficient to state a claim. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 557 (2007); *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)(for the proposition that "mere conclusory statements" that lack supporting factual allegations need not be taken as true.). This is particularly true where the allegations are necessary to support standing as *"*[s]tanding established at the pleading stage by setting forth [,*inter alia,*] *specific facts* that indicate that the party has been injured in fact or that injury is imminent…*" Sartin v. EKF Diagnostics, Inc.,* 16-1816, 2016 WL 3598297, at *3 (E.D. La. July 5, 2016) (citations omitted) (emphasis added). Further, "nondescript and conclusory allegations of injury are not the type of general factual allegations from which the Court may presume the specific facts necessary to ensure that the plaintiff has standing, and are insufficient to meet the plaintiff's burden of alleging an injury in fact that is concrete and particularized." *Id.* (internal quotations omitted) (quoting *Brown v. F.B.I.*, 793 F.Supp.2d 368, 374 (D.D.C. 2011)). Plaintiff's bare allegations that merely repeat the statutory language, and which are wholly devoid of any specific facts supporting such allegations, are not sufficient for Plaintiff to demonstrate the type of "concrete" injury required for standing.

Further, in *Jamison v. Bank of America,* Case No. 16-cv-422-KJM-AC, 2016 WL 3653456, *5 (E.D. Cal. July 6, 2016), the Court held that "a procedural violation of the TILA [Truth in Lending Act] requirements for payoff statements does not inherently establish concrete harm." The *Jamison* Court distinguished cases where a statutory violation itself may be the concrete harm such as *Public Citizen, supra* and *Atkins, supra* since in those cases, the statutes at

issue "required public disclosure of certain government information; thus, the plaintiffs' inability to obtain information subject to disclosure under the statutes in itself constitutes a concrete injury." *Id.* at \*4. *See also Smith v. The Ohio State University,* 15-cv-3030, 2016 WL 3182675 (S.D. Ohio June 8, 2016) (wherein the Court held that plaintiffs' allegations that FCRA violations invaded their privacy and misled them as to their rights, but did not result in any concrete injury, did not satisfy the injury-in-fact requirement of Article III standing.) [7]

### 2. Plaintiff Has Not Alleged a "Risk of Harm" Sufficient to Demonstrate Article III Standing

Plaintiff claims that he has also alleged a sufficient "risk of harm" from the claimed statutory violations to satisfy the requirement of Article III standing. Indeed, Plaintiff goes so far as to assert that "the Complaint alleges that an extraordinarily severe and inherent harm *could* result if Crème's illegal biometrics database were to fall into the wrong hands: identity theft and theft of children." (Resp. at 13) (emphasis added). In continuing this hyperbolic parade of horribles, Plaintiff further claims that "[r]equiring a person to wait until he or she is actually injured by the unauthorized collection of biometrics—for instance, until *after* a child is picked up from school by a stranger—would defeat the spirit and purpose of BIPA." *Id.* However, this argument is specious—even if it were possible for someone to somehow fake Plaintiff's fingerscan, Plaintiff himself is not at risk for the harm of *his* children being picked up—his children have not attended the Crème facility since May 2014—nearly two years before the filing of this lawsuit. Thus, the Plaintiff here, has absolutely no risk of harm and therefore, cannot establish standing on this basis. It is axiomatic that in a class action, named plaintiffs must show that they *personally* have been injured, *not* that injury has been suffered by other, unidentified

---

[7] While there have been a few post-*Spokeo* contrary decisions, they are distinguishable on the facts. *See e.g. Lane v. Bayview Loan Servicing, LLC,* No. 15-C-10446, 2016 WL 3671467 (N.D. Ill. July 11, 2016) (Court found concrete injury sufficient for standing where under FDCPA, Plaintiff had lost the right to verify the debt by Defendant's actions); *Church v. Accretive Health, Inc.,* No. 15-15708, 2016 WL 3611543 (3rd Cir. July 6, 2016) (Court found that under FDCPA, Plaintiff had alleged concrete injury which allows a right to sue for the failure to receive communications to the debtor by the debt collector regarding the nature of the alleged debt); and *Thomas v. FTS USA, Inc,* No. 13-825, 2016 WL 3653878 (E.D. Va. June 30, 2016) (Court found that claimed violations of FCRA— the failure of credit reporting agency to report employer's procurement of credit report of applicant, is a concrete informational injury).

members of the class to which they belong   *Spokeo*, 136 S.Ct. at 1547 n.6 (citations omitted);   *In re Fluidmaster,* 149 F.Supp.3d 940, 958-59 (N.D. Ill. 2016) ("However, Plaintiffs in a class action cannot rely on unnamed plaintiffs to satisfy Article III's standing requirement…Standing cannot be acquired through the backdoor of a class action.")(citations and internal quotations omitted).  Mr. Carroll himself cannot demonstrate a "risk of harm" and therefore, has no standing.

Nor can Plaintiff satisfy the risk of harm requirement with the argument that his biometric data is at risk since there are no allegations of a data breach.  Many of the "risk of harm" cases are data breach cases and courts have found that where nothing has been done with the information obtained from the data breach (which is not alleged here), the "risk of harm" that something *could* happen, is not sufficient to establish this prong of the Article III standing inquiry.  This is still true post-*Spokeo*.  In *Duqum v. Scottrade, Inc.,* Case No. 15-cv-1537-SPM, 2016 WL 3683001 (E.D. Mo. July 12, 2016), the Court reiterated that even where there is a data breach, a plaintiff must allege facts clearly demonstrating Article III standing.  In *Duqum,* hackers gained access to confidential information of 4.6 million customers and built a competing customer database for marketing and brokering stock transactions.  Plaintiff alleged breach of contract, breach of implied contract, negligence, and violations of various state consumer protection statutes.  The plaintiff alleged several categories of injuries—a risk of identity theft, temporal cost, failure to receive the full benefit of their bargain as a result of receiving brokerage and financial services less valuable than what they paid for, and invasion of privacy.  *Id.* at *3.

The *Duqum* Court found that the harm alleged depended on "considerable speculation regarding the hackers' possible intentions and future actions,  including that "Plaintiffs will suffer harm only *if* the hackers actually intend to use Plaintiffs' PII to commit identity theft, fraud or some other act that might harm Plaintiffs; *if* the hackers attempt to use the PII to commit such identity theft, fraud, or other act; *if* they actually succeed in doing so; and *if* the identity theft, fraud, or other act causes harm to Plaintiffs."  *Id.* at *4 (emphasis in original).  Thus, the Court held that there was no standing as "Plaintiffs did not face any harm that is "certainly

impending." *Id.* The same situation is attendant here; the risk of harm identified by Plaintiff would only arise *if* there was a data breach, *if* the fingerscans without associated information could be somehow useful, *if* the hacker's motivation was to steal children, *if* the hacker or thief somehow knew when and where the children would be, *if* the hacker could actually fake the onsite finger scan, and *if* the hacker could get by the other in person security features at the facility. In other words, the "risk of real harm" is clearly not "certainly impending" and depends on "a highly attenuated chain of possibilities." *Clapper v. Amnesty Int'l USA,* 133 S.Ct. 1138, 1147 (2013) (A risk of future injury is concrete only when that injury is "certainly impending" and "speculative allegations which rel[y] on a highly attenuated chain of possibilities do [] not satisfy the [certainly impending] requirement) (citations and internal quotations omitted).

In *Duqum,* the Court also noted the hypothetical nature of the harm was strengthened by the fact that two years had passed since the data breach without any fraud or identity theft, noting that "courts also often consider whether a significant period of time has passed since the breach without the plaintiffs having suffered the threatened injury, because '[a]s more time lapses without the threatened injury actually occurring, the notion that the harm is imminent becomes less likely. *In re SuperValu, Inc.,*14-MD-2586, 2016 WL 81792, at *5 (D. Minn. Jan. 7, 2016); see also *Storm v. Paytime,* 90 F.Supp. 3d 359, 366-67 (M.D. 2015). Likewise, in this case, it has been two years since Plaintiff's children were enrolled at a Crème facility and there are no allegations of any type of hacking, identity theft, fraud or any other misuse or compromise of Plaintiff's biometric data. Thus, any alleged risk of harm in this case with respect to Plaintiff, is clearly not "imminent" or "certainly impending."

Additionally, in *Khan v. Children's National Health System,* Case No. TDC-15-2125, 2016 WL 2946165, at *2 (D. Md. May 19, 2016)*,* which also concerned a data breach, the Court found similar allegations insufficient to establish risk of harm for Article III standing purposes. The Court further observed that "the majority of district courts faced with challenges to the standing of data breach victims follow this pattern. In the absence of specific incidents of the use of stolen data for identity fraud purposes, district courts have generally found that the increased

risk of identity theft does not confer standing." *Id.* at *4. Indeed, suits are often dismissed even when the plaintiffs alleged that their personal data had been stolen or accessed but did not allege actual misuse of the data." *Id.* at *5 (citing cases). In *Khan,* the Court therefore concluded that a plaintiff must allege some facts supporting the misuse of the breached data in order to satisfy the requirements of standing. *Id.*

Additional recent cases have also confirmed that something more than a mere statutory violation is required for Article III standing based on "a risk of harm." In *Tourgeman v. Collins Financial Services, Inc.,* 08-CV-1392 CAB (NLS), 2016 WL 3919633, at *2 (S.D. Cal. June 16, 2016), the Plaintiff argued that "the violation of the FDCPA in and of itself []confers Article III standing." The Court disagreed and noted that "*Spokeo* confirms that merely asserting a statutory violation that results in no actual injury is not sufficient to confer Article III standing" nor is a hypothetical risk of harm. *Id.* Similarly, in *Wall v. Michigan Rental,* Case No. 15-13254, 2016 WL 33418539, at *3 (E.D. Mich. June 22, 2016), the Court reiterated, citing *Spokeo*, that "a plaintiff claiming a statutory violation must demonstrate that he or she confronted a "risk of real harm" apart from a 'bare procedural violation" under a statutory regime."

It is clear that the majority of Courts applying *Spokeo* have consistently held that a statutory violation, without more, is generally not sufficient to confer Article III standing. In this case, there are no allegations that support the existence of either a concrete harm or a risk of harm. Plaintiff has no standing and this case should be dismissed.

**B.      Plaintiff's Allegations Also Fail to Support Statutory Standing Under BIPA**

BIPA only allows "any person aggrieved by a violation of this Act" to bring a claim. 740 ILCS 14/20. As noted in Defendant's opening brief, other Illinois statutes that have used the term "aggrieved" define the term as a party who has been injured. (Def. Mem. at 13, ECF 16). Thus, Plaintiff must allege an actual injury beyond just the statutory violation itself to establish statutory standing and an entitlement to damages or injunctive relief under the statute. *See e.g.*

*Padilla v. Dish Network, LLC,* No. 12-cv-7350, at *1-3 (N.D. Ill. July 19, 2013) (wherein the Court held that the plaintiff was not "aggrieved" by the retention of his data and could not recover even statutory damages without plausibly alleging actual damages but could pursue injunctive relief).[8]

Plaintiff also argues that "aggrieved" should be interpreted broadly to mean anyone who falls "within the zone of interests," regardless of harm, sought to be protected by the statute allegedly violated citing *Thompson v. N. Am. Stainless,* 562 U.S. 170, 178 (2011). (Resp. at 14). However, in *Thompson,* the Supreme court held that to be "aggrieved," the plaintiff not only had to suffer 'injury in fact," the plaintiff had to be within the "zone of interests" of the statute. *Id.* at 176-78. The Court noted that "we conclude that the term 'aggrieved' must be construed more narrowly than the outer boundaries of Article III." *Id.* at 177. Additionally, Plaintiff's reliance on *Mandziara v. Canulli,* 299 Ill. App. 3d 593 (1998) is similarly misplaced. In that case, whether or not there was an injury was not in dispute—mental health records were improperly obtained in connection with a custody dispute and the documents were reviewed by the court resulting in the plaintiff losing custody of her child. Thus, the Court's application of the term "aggrieved" in that case is simply not instructive under the circumstances and allegations in this case.

## III. CONCLUSION

For the reasons set forth herein and in Defendant's Opening Memorandum, Plaintiff has no Article III or statutory standing and the Complaint should be dismissed with prejudice.

---

[8] In one of the two state cases that have heard oral argument on BIPA claims, *Rottner v. Palm Beach Tan, Inc.,* 15 CH 16695 (Cook County, July 12, 2016), Judge Mary Mikva found that Plaintiff was an aggrieved party entitled to bring a claim but the Court also noted that "I continue to have a serious question as to whether or not she has any claim for damages including liquidated damages, given the complete lack of any dissemination around her protected information." (Tr. at 38. A copy of the transcript is attached as Exhibit C). The Court allowed leave to amend the negligence claim and suggested that the Defendant file a motion to strike the damages claim. In the other state court case, *Rosenbach v. Six Flags Entertainment Corp.,* 16 CH 13 (Lake County, Il.)*,* the Court denied the motion to dismiss and found statutory standing. However, a Rule 308 Motion for Certification of several questions is pending and will be heard on September 16, 2016. (A copy of the Motion and Order are attached hereto as Exhibit D and E, respectively). The Court had indicated that it was inclined to grant the motion but wanted additional briefing. Both of these cases involved fingerscan access to their facilities. The undersigned counsel represents Six Flags in that case.

DATED:     August 1, 2016                    Respectfully Submitted,

By:    *Debra R. Bernard*

Debra R. Bernard (ARDC No. 6191217)
PERKINS COIE LLP
131 South Dearborn Street, Suite 1700
Chicago, Illinois 60603-5559
(312) 324-8400
(312) 324-9400
dbernard@perkinscoie.com

*Attorneys for Defendant Crème de la Crème,
Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that, on August 1, 2016, a copy of the foregoing Reply Memorandum in Support of Its Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) was served via ECF filing to the following attorney of record:

Jennifer W. Sprengel
Daniel O. Herrera
CAFFERTY CLOBES MERIWETHER
& SPRENGEL LLP
150 S. Wacker Dr., Suite 3000
Chicago, Illinois 60606
Phone: (312) 782-4880
Facsimile: (312) 782-4485
Email: jsprengel@caffertyclobes.com
dherrera@caffertyclobes.com

Local Counsel for Plaintiff and the Putative Class

David P. Milian*
Frank S. Hedin*
CAREY RODRIGUEZ MILIAN GONYA, LLP
1395 Brickell Avenue, Suite 700
Miami, Florida 33131
Telephone: (305) 372-7474
Facsimile: (305) 372-7475
dmilian@careyrodriguez.com
fhedin@careyrodriguez.com

Counsel for Plaintiff and the Putative Class

/s/ *Debra R. Bernard*